IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CARL D. GASKIN,
      Plaintiff,

vs.                                   Case No. 5:10cv44/MCR/CJK

W. MATHEWS, et al.,
      Defendants.

_____

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed a second amended civil rights complaint under 42 U.S.C. § 1983.  (Doc. 21).  Upon review of the amended complaint, the Court concludes that plaintiff has not presented an actionable claim against three of the named defendants, and that dismissal of those defendants is warranted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was an inmate of the Florida Department of Corrections ("DOC") when he initiated this lawsuit on March 3, 2010.  (Doc. 1).  Plaintiff was released from DOC custody on October 4, 2010 (doc. 17), and filed his second amended complaint on December 15, 2010.  (Doc. 21).  Plaintiff seeks compensatory and punitive damages based on his claims that, while working in the kitchen at Calhoun Correctional Institution ("Calhoun CI"), plaintiff broke his femur in a slip-and-fall accident and did not receive proper treatment from medical staff.  (Doc. 21). Plaintiff's second amended complaint names four defendants, all Calhoun CI employees:  Nurse Mathews, a Senior Licensed Practical Nurse; Nurse Ziegler, a

Senior Licensed Practical Nurse; Colonel McAlpin, the "head of security"; and Corrections Officer Abbott, a kitchen supervisor. (Doc. 21, pp. 1-2). The essential facts are these.

In early 2008, defendant McAlpin, either on his own initiative or by direction of DOC officials in Tallahassee, removed all rubber safety mats from the kitchen work area at Calhoun CI. (Doc. 21, Statement of Facts ¶ 4). On March 13, 2009 at approximately 3:00 p.m., plaintiff slipped and fell while working in the kitchen. The accident occurred near four boiler kettles, which is a congested area with a tiled floor. Plaintiff slipped on a slick stainless steel flange which is part of the drainage system. (*Id*. ¶¶ 9-13). Plaintiff fell on his right hip. Plaintiff states that it was visually obvious that his femur bone was broken, because it was "in a distorted alignment." (*Id*. ¶ 14). Plaintiff states this "is an incident of high occurrence, where floors are more often than not subject to spills of food substance, soaps, water and assorted liquids of varying consistencies, viscosities, temperature and amounts." (*Id*. ¶ 16).

Another inmate saw plaintiff fall and helped plaintiff pull himself from the floor. (*Id*. ¶ 23). Plaintiff complains that defendant Abbott was not "within the immediate area," and did not appear until after several inmates arrived to assist plaintiff. (*Id*. ¶ 24). Someone called for medical assistance and defendant Nurse Mathews arrived with a wheelchair. (*Id*. ¶ 26). Plaintiff complains that Nurse Mathews began "threatening" plaintiff to either get up and get into the wheelchair or be physically forced to do so by Mathews. (*Id*. ¶ 28). After plaintiff yelled that he could not move, several inmates assisted plaintiff into the wheelchair. (*Id*. ¶¶ 29-30). Plaintiff complains that Nurse Mathews and Officer Abbott "stood by idly and watch[ed]" and that Nurse Mathews threatened plaintiff that plaintiff "had better hope that something serious was wrong with him or he [Mathews] was going to place him

in confinement." (*Id*. ¶¶ 30-31). Plaintiff was taken to the medical department and admitted to the infirmary. On March 15, 2009 at approximately 9:00 a.m., Nurse Mathews entered the infirmary with a pair of crutches and a pass for "bed rest lay-in" for eight days. Plaintiff states that "[n]o doctor or P.A. had signed off on the pass." (*Id*. ¶ 34). Plaintiff informed Mathews that he "was wracked with pain" and could not move from the waist down. Nurse Mathews warned plaintiff that if he did not leave the infirmary he would be placed in confinement. (*Id*. ¶¶ 34-35). Plaintiff left on crutches and went to his housing unit.

The following morning an officer in plaintiff's dormitory inquired of plaintiff when he had last eaten. (*Id*. ¶ 42). Plaintiff responded that it had been 30 hours, and that he could not go to the chowhall because he was in too much pain and was unable to move from the waist down. (*Id*.). The officer called defendant Abbott and requested a bag lunch for plaintiff. (*Id*. ¶ 43). Defendant Abbott refused a bag lunch and informed the officer that plaintiff must go to the chowhall to eat.

After allegedly going six days without food, (*id*., ¶ 43), the officer declared a medical emergency. Defendant Nurse Zeigler responded with a wheelchair. (*Id*. ¶ 44). Plaintiff complains that Nurse Zeigler directed the inmates to put the crutches on the wheelchair, stating, "He will need them on the way back." (*Id*. ¶ 45). Plaintiff further complains that Nurse Zeigler forced plaintiff to get out of the wheelchair once they arrived at the medical department, because it was the only wheelchair they had. Plaintiff got out of the wheelchair using his crutches. (*Id*. ¶ 46). Shortly thereafter plaintiff was seen by a doctor, who ordered an x-ray. (*Id*. ¶¶ 48). Plaintiff returned to his dormitory pending the x-ray. Plaintiff was x-rayed on March 19, 2009, (*id*. ¶ 52), and that same day was transported to Jacksonville Memorial Hospital for emergency surgery. (*Id*. ¶ 61). Plaintiff received surgery on March 22, 2009, and

was discharged to the Reception and Medical Center the following day.  (*Id*. ¶¶ 62, 63).  Plaintiff complains of the medical care he received at the Reception and Medical Center, but does not allege that any of the defendants were involved in that care.  (*Id*. ¶¶ 63-67 ).  Plaintiff returned to Calhoun CI on July 14, 2009.  (*Id*. ¶ 68 ).[1]  Plaintiff complains of medical care he received after he returned to Calhoun CI, but does not allege that any of the defendants were involved in the alleged lack of treatment.  (*Id*. ¶¶ 69-73).

Based on the foregoing, plaintiff claims defendant McAlpin violated the Eighth Amendment when McAlpin removed the rubber mats from the kitchen floor.  Plaintiff claims defendant Abbott violated the Eighth Amendment when Abbott failed to show concern for the hazardous work conditions and refused to provide plaintiff a bag lunch.  Plaintiff claims defendant Zeigler violated the Eighth Amendment when she made her unsympathetic comment in the dormitory and required plaintiff to get out of the wheelchair at the medical department.  Plaintiff claims defendant Mathews violated the Eighth Amendment when he "acted put-out" in response to plaintiff's injury and when he "forcibly coerced" plaintiff to leave the infirmary.

## DISCUSSION

Because plaintiff is proceeding *in forma pauperis*, the Court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  The court must read plaintiff's *pro se* allegations in a liberal fashion.  *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).  Dismissals for failure to state a claim are

---

[1]Plaintiff's second amended complaint incorrectly states that plaintiff returned to Calhoun CI on March 14, 2009, but it appears that the date was July 14, 2009.  (Doc. 1 ¶ 107).

governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).   In determining whether the complaint states a claim upon which relief may be granted, the court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).   The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1968-69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).   A complaint is also subject to dismissal under Rule 12(b)(6) when the allegations – on their face – show that an affirmative defense bars recovery on the claim.  *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*,  549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007) (reiterating that principle and providing, as an example, that if a complaint's allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim).   Taking the allegations of plaintiff's second amended complaint as true and construing them in the light most favorable to plaintiff, plaintiff fails to state a plausible Eighth Amendment claim against defendants McAlpin, Abbott or Zeigler.

The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions.  The Eleventh Circuit summarized this standard in *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004):

First, under the "objective component," a prisoner must prove that the

condition he complains of is sufficiently serious to violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). The challenged condition must be "extreme." *Id*. at 9, 112 S. Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id*. at 35, 113 S. Ct. at 2481. Moreover, "the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36, 113 S. Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." *Rhodes* [*v. Chapman*], 452 U.S. [336,] 347, 101 S. Ct. [2392,] 2399 [(1981)].

*Chandler*, 379 F.3d at 1289-90. The second part of the two-part analysis is the "subjective component:"

[T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson*, 503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted). The proper standard is that of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). Negligence does not suffice to satisfy this standard, *id*. at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). In defining the deliberate indifference standard, the *Farmer* Court stated: " [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, 114 S. Ct. at 1979.

*Chandler*, 379 F.3d at 1289-90.

Individuals do not have a constitutional right (1) to be free from a government employee's negligence, even if it causes an injury or (2) to have the government protect them from such an injury. *See Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). To amount to a violation of the Constitution, the official's actions must be deliberate or reckless in the criminal sense. *See Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).

In order to hold defendants McAlpin and Abbott liable under the Eighth Amendment, plaintiff must show that the lack of rubber mats on the kitchen floor posed a substantial risk of serious harm to inmate safety, and that these defendants knew of, and disregarded that risk by conduct that is more than gross negligence. Plaintiff's allegations do not make that showing. "[S]lippery floors constitute a daily risk faced by members of the public at large." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004). This Court, as well as federal courts from other circuits have consistently held that slippery prison floors do not violate the Eighth Amendment. *See Reynolds*, 370 F.3d at 1031 (holding that slippery condition arising from standing water in prison shower was not a condition posing a substantial risk of serious harm as required under the Eighth Amendment, even where inmate was on crutches and had warned prison employees that he was at heightened risk of falling); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (holding that "an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety"); *Marsh v. Jones*, 53 F.3d 707, 711-12 (5th Cir. 1995) (holding that inmate's

claim for monetary damages resulting from defendants' failure to warn that a leaking or sweating air conditioner made the floor wet was "a garden-variety negligence claim that was not actionable under § 1983"); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (holding that "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment."); *Robinson v. Cuyler*, 511 F. Supp. 161, 162-63 (E.D. Pa. 1981) (dismissing prisoner's Eighth Amendment claim against prison officials for allegedly hazardous working conditions in prison kitchen caused by slick floor (resulting in prisoner sustaining serious injury when he slipped, fell and was burned by hot food from an overturned pot); concluding that a slippery floor does not inflict cruel and unusual punishment in violation of the Eighth Amendment); *Snyder v. Blankenship*, 473 F. Supp. 1208 (W.D. Va. 1979), *aff'd mem.*, 618 F.2d 104 (4th Cir. 1980) (dismissing prisoner's Eighth Amendment claim based on prisoner slipping and falling on slick prison kitchen floor caused by leaking dishwasher – even though prisoner offered proof of prison officials' knowledge of hazardous condition and past serious injuries resulting from slips and falls on the floor – prison officials' failure to remedy the situation "cannot be said as a matter of federal law to be conduct shocking to the conscience or repugnant to civilized standards of a maturing society"); *see also, e.g., Harris v. Stalder*, 261 F. App'x 658 (5th Cir. 2008) (holding that prisoner's attempt to hold prison officials liable for physical injuries sustained when prisoner slipped and fell on wet prison kitchen floor failed to allege a viable deliberate indifference claim); *Beasley v. Anderson*, 67 F. App'x 242 (5th Cir. 2003) (prisoner's claim that he slipped and fell on slippery shower floor sounded in negligence and was insufficient to allege a constitutional violation); *Lefall v. Johnson*, 48 F. App'x 104 (5th Cir. 2002) (prisoner's claim that he suffered back injury after slipping and falling on a wet floor caused by persistent plumbing leaks

of which defendants were aware was, at most, a claim of negligence which is not actionable under § 1983); *Davis v. Corr. Corp. of Am.*, No. 5:07cv279/RS/EMT, 2008 WL 539057 (N.D. Fla. Feb. 22, 2008) (dismissing prisoner's Eighth Amendment claim for injury sustained when prisoner slipped and fell due to water on floor from leaking toilet).

Plaintiff offers no special or unique circumstances that require a departure from the general rule barring Eighth Amendment liability in prison slip and fall cases. Further, for plaintiff to overcome a defense of qualified immunity, he would have to show that the law was clearly established in 2009 that the failure to provide rubber mats in a prison kitchen violated the Eighth Amendment.  In light of the numerous federal cases holding that the Eighth Amendment does not apply to prison slip and fall accidents, this Court would be constrained to conclude that the Eighth Amendment right allegedly violated by defendants McAlpin and Abbott was not clearly established at the time of plaintiff's accident.  As plaintiff fails to state a plausible Eighth Amendment claim against defendants McAlpin and Abbott, these defendants should be dismissed.

Plaintiff also fails to state a plausible Eighth Amendment claim against Nurse Zeigler.  To state an Eighth Amendment violation, plaintiff must show (1) that he had an objectively serious medical need, (2) that Nurse Zeigler was deliberately indifferent to that need, and (3) that Zeigler's deliberate indifference caused plaintiff injury.  Plaintiff complains about Nurse Zeigler's cynical comment that plaintiff would "need [the crutches] on the way back," (doc. 21 ¶45), but this comment does not arguably give rise to an Eighth Amendment violation.  *See, e.g., Bismark v. Fisher*, 123 F. App'x 892, 897 (11th Cir. 2007) ("[I]t is not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical

condition in an aloof or unfriendly way.  Much more is required."); *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th  Cir. 2008) ("[V]erbal abuse alone is insufficient to state a constitutional claim.").  Plaintiff's remaining complaint that Zeigler required plaintiff to get out of the wheelchair at the infirmary fares no better. Plaintiff admits that it was the only wheelchair the medical department had and that plaintiff had crutches to assist him.  A reasonable jury could not conclude that Zeigler acted unreasonably in requiring that the wheelchair be available in case of another medical emergency.

Accordingly, it is respectfully RECOMMENDED:

1.  That plaintiff's claims against defendants McAlpin, Abbott and Zeigler be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), for plaintiff's failure to state a claim upon which relief may be granted.

2.  That this case be remanded to the undersigned for further proceedings on plaintiff's claims against defendant Nurse Mathews.

At Pensacola, Florida this 19th day of December, 2011.

*/s/ Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *Se*e 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).